931 F.2d 894
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul Lester WILSON, Jr., Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 90-3730.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1991.
 
 Before BOYCE F. MARTIN, JR. and RALPH B. GUY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Paul L. Wilson, Jr., appeals from the denial of his 28 U.S.C. Sec. 2255 petition for vacation of his sentence. Wilson's primary argument is predicated upon a claim of ineffective assistance of counsel. He also argues that (1) a certain tape recording should not have been admitted at the hearing on his section 2255 petition; (2) the court erred in weighing the credibility of witnesses; and (3) the court erred in denying his motion to reopen the evidentiary hearing.
 
 
 2
 Upon a review of the record, we find no error. Both the magistrate to whom this matter was initially referred and the trial judge, wrote detailed written opinions addressing the issues raised by petitioner. We affirm on the basis of these opinions and write briefly only for additional clarification.[1]
 
 I.
 
 3
 On February 16, 1986, Wilson was indicted for an extortionate credit transaction and conspiracy to commit such an offense (CR 86-710). Plea negotiations followed with Wilson being represented by attorney Norman Zemmelman, who had represented Wilson in earlier matters. A formal written plea offer was made by the government on April 7, 1986. This plea proposal contained a five-year cap on any custody sentence imposed. Wilson rejected the offer and Zemmelman communicated this rejection in writing on April 18, 1986, particularly noting that the five-year prison term was unacceptable.
 
 
 4
 Following the breakdown of these plea negotiations, Wilson was again indicted on April 24, 1986, on RICO, gambling, and tax evasion charges (CR 86-720). Following an appearance on this second indictment, Wilson jumped bond and fled to Mexico. While in Mexico, petitioner placed a telephone call to the Toledo, Ohio, Office of the United States Attorney and spoke to an assistant United States attorney and an FBI agent. The call was recorded. Wilson was subsequently apprehended by Mexican police and returned to the United States. He was then indicted for bond jumping (CR 87-733).
 
 
 5
 Wilson went to trial on the first indictment (CR 86-710), and was found guilty on October 9, 1987, after a jury trial. Still facing two additional trials, Wilson initiated contact with the government seeking consideration for the other charges in return for cooperation. Wilson indicated he did not want his attorney to know about this offer, however. Wilson subsequently terminated his relationship with his attorney in open court before Judge Potter, and the court, at Wilson's request, appointed attorney Adrian Cimerman to represent him.
 
 
 6
 It is not clear from the record just what was arranged between Wilson and the government, but some months later on November 10, 1987, Wilson pleaded guilty to the bond jumping charge (CR 87-733). Shortly thereafter, on December 21, 1987, Wilson pleaded guilty to selected counts from the RICO-tax indictment (CR 86-720), in return for a total combined sentence cap of 14 years, covering all three indictments. As part of this final bargain, Wilson waived his appeal rights in CR 86-710 and CR 87-733. Wilson was given the 14-year sentence for which he bargained on February 8, 1988. Some two years later, Wilson filed this petition for section 2255 relief.
 
 II.
 
 7
 Wilson's original section 2255 petition was filed pro se, but counsel was appointed prior to the evidentiary hearing. The original petition was amended several times and, by the time of the hearing, petitioner had reduced his assorted allegations to three claims: (1) that attorney Zemmelman afforded Wilson ineffective assistance of counsel by failing to inform him of the government's plea bargain proposal on April 7, 1986; (2) that FBI agents induced Wilson to dismiss attorney Zemmelman, and that petitioner was further induced to enter into a plea bargain to plead guilty to CR 86-720 and CR 87-733 by promises that another and more lenient plea bargain would be obtained after he entered his plea; and (3) that Wilson received ineffective assistance from attorney Cimerman, who assured him that he would retain his rights to appeal and could seek a more favorable plea bargain after entering his guilty pleas.
 
 
 8
 At the two-day hearing conducted by the magistrate on February 14 and 15, 1990, Wilson called eight witnesses and also testified himself. The government called no witnesses. No witness called by Wilson supported any essential element of his claims, with the exception of Wilson himself. Wilson admitted that he lied under oath during the course of the extended proceedings, that he provided contradictory information by affidavit and deposition, and that he had knowingly executed and sworn to a false affidavit.
 
 
 9
 The magistrate concluded that the hearing was essentially a credibility contest and found that the petitioner's testimony was "implausible, untrustworthy, and false." (App.56). The magistrate supported this finding by his observations of the petitioner's demeanor during the hearing; the contrasting demeanor and manner of testifying on the part of the other witnesses; the inherent implausibility of much of his testimony; the motive that would induce Wilson to be untruthful; and the fact that Wilson, as he acknowledged during the evidentiary hearing has, in the past, submitted evidence and made statements under oath that were knowingly false.
 
 
 10
 Our own review of the record convinces us that the magistrate correctly resolved the credibility issue. Witness credibility is solely within the province of the trier of fact. United States v. Schultz, 855 F.2d 1217 (6th Cir.1988). Although the magistrate makes a report and recommendation to the trial judge, the trial judge is free to accept the credibility recommendations of the magistrate without reconducting the hearing. United States v. Raddatz, 447 U.S. 667 (1980). In that "rare case" of reversal of a magistrate's credibility determinations, "there should be found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis should be articulated by the district judge." United States v. Marshall, 609 F.2d 152, 155 (5th Cir.1980).
 
 III.
 
 11
 At the evidentiary hearing, a tape was played of the recording of Wilson's telephone call from Mexico.[2] FBI Agent Snyder, who recorded the call, testified that he operated the recording device and listened to both the FBI agent and the assistant United States attorney as they spoke with Wilson. Snyder further testified that he listened to the recording after it was made and recognized the voices of all three participants in the conversation. He then identified government exhibit seven as a duplicate of the original tape recording, stating that it was an accurate reproduction of the original. Upon further inquiry, Agent Snyder testified that the original recording had been sent to the FBI evidence control room in Cleveland where it was stored. He also testified that there was no evidence of tampering or alteration of the tape.
 
 
 12
 Wilson's only counter to this testimony is that he believes the tape was not accurate. Here again, we have a credibility issue that was resolved correctly against Wilson.
 
 IV.
 
 13
 Long after the evidentiary hearing was completed, but prior to any final decision being issued by the district judge, petitioner sought to reopen the record. The "new" evidence that petitioner sought to add consisted of derogatory allegations concerning his two attorneys--Zemmelman and Cimerman. The proffered evidence as to attorney Zemmelman consisted of statements from relatives of a defendant in a wholly unrelated case who were dissatisfied with Mr. Zemmelman's handling of that case. The allegations relating to attorney Cimerman involved Cimerman's alleged use of marijuana and cocaine. These allegations were unsupported and had been touched upon in the prior evidentiary hearing, at which Mr. Cimerman denied any drug usage.
 
 
 14
 We have little doubt that the district judge correctly and wisely declined to reopen the record on the basis of these allegations. Apart from their unsupported and hearsay nature, they lacked relevance since the only issue was the nature of the representation these attorneys provided to Wilson. Their performance in other cases or their personal peccadillos were not connected in any way to the representation provided to Wilson. Furthermore, Wilson's own witness, attorney Jerome Phillips, testified that both Zemmelman and Cimerman had the reputation of being highly competent and principled attorneys. We can find no abuse of discretion in not reopening the record.[3]
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The district judge also wrote briefly but adequately as to his reasons for denying the motion to reopen. (App.98)
 
 
 [2]
 The tape was properly played during the cross-examination of a witness called by petitioner
 
 
 [3]
 Petitioner also raises a claim of error as to the exclusion of testimony by IRS Agent Richard Johnson. We find this claim to be meritless